## WHIGHTSEL v. FELTON.

(Circuit Court, S. D. Ohio, E. D. July 31, 1899.)

### No. 886.

RAILROAD RECEIVERS—POWERS—ADOPTION OF PRIOR CONTRACTS OF COMPANY.
  A receiver for a railroad may fulfill contracts made by the company prior to his appointment, so far as they serve the purposes of his appointment, which are to preserve the property and operate the road in the interests of the public, but no further; and he has no power, by the adoption of a contract by which the company agreed to retain in its employ one injured in its service, in settlement of a claim for damages for the injury, to bind himself or the property for the payment of damages for a breach of the contract on the discharge of the employé, the contract being merely an unsecured obligation of the company, which he has no authority to make a preferred claim.

This is a petition against Samuel M. Felton, as receiver of the Columbus, Sandusky & Hocking Railway Company. Heard on demurrer to the petition.

F. V. Owen, for plaintiff.

Lawrence Maxwell, Jr., for defendant.

THOMPSON, District Judge. This case is submitted to the court on demurrer to the petition. The petition shows that the plaintiff, while in the employ of the railroad company, was injured, and in consideration of the injury, and the agreement of the plaintiff that he would bring no action against the railroad company for the injury, the company agreed to pay him $630, and employ him in its service as long as he should be able and competent to fill the positions assigned to him, and perform his duties properly, and conform to such rules and regulations as the company should from time to time adopt, and, in the event of his dismissal or discharge from the service, give him a written statement of the reasons and causes for such dismissal. The plaintiff agreed to accept the employment upon these conditions. The $630 was paid to him, and he was employed as a conductor, and continued in the service of the railroad company as such until the appointment of the receiver. It is alleged in the petition that:

"The receiver adopted said contract, and continued plaintiff in said service as conductor, under said contract, until the 19th day of March, 1898, when said receiver discharged or dismissed him from his said service, without giving him a written statement of the reasons or causes for such discharge, as provided in said contract, and in fact discharged him without any cause whatever, under said contract or otherwise."

The plaintiff, by reason of his discharge or dismissal, claims that he has been damaged in the sum of $25,000, for which he asks judgment against the receiver.

In the argument the demurrer is put upon the ground that the contract set forth in the petition is invalid, for lack of mutuality, in that it is not shown that the plaintiff agreed to serve the receiver; but, if the contract was one which the receiver was authorized to adopt, and which the court would enforce against him, I doubt whether the claim of lack of mutuality would be tenable. In the contract between the plaintiff and the railroad company, the plaintiff promised to serve the railroad company, and there was complete mutuality of obligation, and, under the broad allegations of the petition that the receiver adopted the contract, it could hardly be said that there was a want of mutuality because of a failure to show a promise upon the part of the plaintiff to serve the receiver.

The important question, however, is whether the contract is one which the receiver will be permitted to adopt, or which the court will enforce against him. "The receiver is not bound to respect or continue a contract entered into before his appointment. To do so on any grounds other than necessity for the operation of the road would be to divert the earnings from the purposes for which the receivership was created. The receiver has the same discretion in continuing such contracts as in incurring other expenditures and liabilities necessary for a successful management. Claims for loss incurred by

the refusal of the receiver to fulfill such contracts remain on the same status as other debts of the company incurred before the receiver's appointment." 20 Am. & Eng. Enc. Law, 375. "The payment of debts of the corporation, previously contracted, would be inconsistent, as well with the nature and purpose of the office of the receivers as with the terms of their appointment. They have no right to appropriate the property and assets of the corporation for that purpose, nor the earnings of the road while operated by them." Ellis v. Railroad Co., 107 Mass. 17.

The moneys which the company agreed to pay the plaintiff for his services as conductor were not to be paid in performance of a contractual obligation simply, but in discharge and in liquidation of his claim and right of action for the injury he received. Frazier v. Railway Co., 88 Tenn. 138, 12 S. W. 537. And while the moneys paid to him by the receiver during the time that he was continued in the service of the receiver were a part of the operating expenses of the road, yet the payment of damages for the non-performance of the contract would be the discharge of the debt of the company, created before the appointment of the receiver, and would be the diversion of so much money from the lienholders, to whom it belongs. The receiver might employ plaintiff as a conductor in operating the road, or continue him in that employment as long as his services were needed and were valuable, and the compensation for his services would properly constitute a part of the operating expenses of the road. But an agreement on the part of the receiver, by the adoption of the contract set forth in the petition or otherwise, to pay the plaintiff the damages he might sustain by reason of the nonperformance of the contract, would be inconsistent with, and in frustration of, the purposes for which the receiver was appointed. A receiver is appointed for the preservation of the property placed in his hands, and the receiver of a railroad is appointed, not only for the preservation of the property in his hands, but to operate it for the benefit of the public. The operation of the road is not only required in the discharge of the duty owing to the public, but is necessary for the preservation of the property itself, and the receiver may fulfill the contracts of the corporation so far as they serve these purposes, but may not pay its debts or fulfill its contracts, which are burdensome, or tend to diminish the value of the property, unless such contracts are charged as incumbrances upon the property. 107 Mass. 28.

The claim of the plaintiff is not a lien or incumbrance upon the property in the hands of the receiver. It is an unsecured claim. Yet, if the income of the railroad company or the proceeds of the sale of its property could be diverted to the payment of damages for the nonperformance of the contract set forth in the petition, it would result in giving the plaintiff's claim preference over the mortgage and other lienholders. The alleged adoption of the contract by the receiver is inconsistent with, and not in furtherance of, the purposes for which he was appointed, and would defeat and frustrate these purposes to the extent of the plaintiff's claim. The plaintiff has not been prejudiced by the action of the receiver. He was paid for

his services for nearly a year after the receiver was appointed, and he may now sue the company, and any judgment he may recover will have its place and rank with the other unsecured claims against the company in the distribution of the fund in the hands of the receiver.

Upon the allegations of the petition, it cannot be assumed that the receiver adopted a contract utterly inconsistent with the purposes of his appointment, and no authority of the court is shown authorizing such adoption. It is true that it is alleged in the petition that the receiver was appointed "with full power to complete and perform all outstanding contracts of said company," but this allegation must be construed to mean all contracts consistent with the purposes of his appointment. I do not think, therefore, that the petition states facts sufficient to constitute a cause of action. The demurrer will, therefore, be sustained.